*Stein Co*, 478 Mich 28 (2007), should be applied in this case. The parties may file supplemental briefs within 56 days of the date of this order, but they should not submit mere restatements of their application papers.

The Workers' Compensation Section of the State Bar of Michigan is invited to file a brief amicus curiae. Other persons or groups interested in the determination of the issue presented in this case may move the Court for permission to file briefs amicus curiae. Court of Appeals No. 285593.

ALLEN V BLOOMFIELD HILLS SCHOOL DISTRICT, No. 137607. We direct the clerk to schedule oral argument on whether to grant the application or take other peremptory action. MCR 7.302(G)(1). At oral argument, the parties shall address whether post-traumatic stress disorder may qualify as a "bodily injury" that permits a plaintiff to avoid the application of governmental immunity from tort liability under the motor vehicle exception, MCL 691.1405. The parties may file supplemental briefs within 56 days of the date of this order, but they should not submit mere restatements of their application papers.

The Michigan Association for Justice, Michigan Defense Trial Counsel, Inc., and the Insurance Institute of Michigan are invited to file briefs amicus curiae. Other persons or groups interested in the determination of the issues presented in this case may move the Court for permission to file briefs amicus curiae. Reported below: 281 Mich App 49.

MYERS V MUFFLER MAN SUPPLY COMPANY, No. 137608. We direct the clerk to schedule oral argument on whether to grant the application or take other peremptory action. MCR 7.302(G)(1). At oral argument, the parties shall address whether defendant Muffler Man Supply Company's alleged negligent act of removing the machine guard was a proximate cause of the injury to plaintiff Ronnie L. Myers. The parties may file supplemental briefs within 56 days of the date of this order, but they should not submit mere restatements of their application papers. Court of Appeals No. 277542.

*Leave to Appeal Denied May 8, 2009:*

EXPRESS PLUMBING, HEATING & MECHANICAL, INC V BECHLER, No. 136961; Court of Appeals No. 282310.

MARKMAN, J. (*dissenting*). Because I believe the Michigan Employment Security Commission (MESC), in a split decision, erred in finding that the claimant was qualified to receive unemployment benefits after she *voluntarily* left her job with her employer, I dissent. Unemployment benefits in this state are intended for individuals—of whom there is no current shortage—who find themselves "unemployed through no fault of their own." MCL 421.2. However, in this case, such benefits are paid to support the claimant's *own* decision to become unemployed out of unhappiness with her employer's altogether reasonable expectation that she provide a full day's work in exchange for her compensation.

"[A]n individual is disqualified from receiving [unemployment] benefits if he or she . . . [l]eft work voluntarily without good cause attributable to the employer . . . ." MCL 421.29(1)(a). " '[G]ood cause' compel-

ling an employee to terminate his employment should be found where an employer's actions would cause a reasonable, average, and otherwise qualified worker to give up his or her employment." *Carswell v Share House, Inc*, 151 Mich App 392, 396-397 (1986).

In 2000, the employer hired the claimant to provide assistance with its storage rental business. The claimant subsequently resigned in May 2006 and sought unemployment benefits. In finding that the claimant had "good cause" for leaving her job, and therefore qualified for unemployment benefits, the administrative hearing officer cited new services in which the employer became involved that required the claimant to perform new duties. Yet, the claimant began performing these duties without objection long before she quit in May 2006. The claimant testified that a rental truck moving service began in December 2000, approximately six months after she began her employment; furnace sales began in March 2002; a shrink-wrap service began in September 2003 and ended in April 2005; and sign sales began in November 2003.

The claimant's duties with respect to these new services were similar to her duties performed with respect to the storage rentals. Mainly, she interacted with customers and provided them with information and service. The claimant never indicated that she was not qualified to perform her new duties; nothing indicates that she had any particular difficulty in completing these duties within her regularly scheduled hours; and, as the hearing officer herself concluded, "[n]one of these tasks required a great deal of time for claimant to assist the customers with." Accordingly, in my judgment, it cannot be said that a reasonable employee would have relinquished her employment because of these new duties, given that the duties were well within the claimant's qualifications and she was able to reasonably complete these duties during her normal work hours.

The hearing officer noted that, based on daily reports transmitted to the employer's main place of business, which was separate from the storage rental facility, the claimant's tasks increased from an average of 7.4 "tasks" a day in 2000 to 17.7 "tasks" a day in 2005. These reports, however, afford no evidence at all of any particular *work* increase. For example, the claimant testified that one of her duties relating to the storage units was to process payments. In July 2000 reports, the claimant specified, "[p]rocessed several payments." Later, in an October 2005 report, she listed "[p]rocessed a couple payments," "[p]rocessed a couple more payments," and "[p]rocessed a phone credit card payment. And mailed out the receipt." Thus, although the number of recorded *entries* related to processing payments may have increased over this period, nothing is revealed about whether the actual *work* increased. The daily reports, in my view, fail to establish *any* increase in work and thus do not support the hearing officer's finding that the claimant had "good cause" to give up her employment.

Although an award for unemployment benefits is reviewed by this Court under a standard according considerable deference to the MESC's factual determinations, the evidence here does not, in my judgment, support the conclusion that the claimant had good cause for quitting her employment. Instead, the evidence demonstrates that, although the

claimant *may* have performed additional duties, in no way did those duties increase her workload beyond what she could reasonably perform during the workday. As the dissenting member of the MESC concluded:

> Here, the record showed the claimant did not have enough to do while on company time. The employer assigned her additional duties to keep her busy, and so that the claimant would not conduct her own personal business while on company time.

Being required to work during all hours of one's employment is hardly a circumstance of employment that would cause a reasonable person to leave. Rather, such an employee must expect that any position of employment, even one that may start out slowly, will eventually require the employee to be working during the hours for which he or she is being paid. To hold otherwise would seemingly permit an employee hired in the midst of a poor economy, when business is slow, to later assert "good cause" once the economy strengthens and the employer's business increases, based on the fact that such employee must then work harder. It is hard to imagine a less responsible unemployment compensation policy, and I do not see evidence in MCL 421.29(1)(a) that this is what Michigan has established. I would reverse the MESC's decision.

PEOPLE v STOVALL, No. 137326. The defendant's motion for relief from judgment is prohibited by MCR 6.502(G). Court of Appeals No. 287160.

KELLY, C.J. (*dissenting*). In 1991, defendant shot and killed two victims. With respect to each killing, he pleaded guilty of second-degree murder. Both pleas involved a sentence agreement under which defendant would be sentenced to parolable life imprisonment.

At the plea hearing, his counsel stated, "I've advised [defendant] that the statute permits the Parole Board to consider him for [parole] at the end of ten years on this type of life sentence . . . ." Defendant later moved to withdraw his pleas, arguing that defense counsel had misled him concerning the likelihood that he could be paroled from his life sentences. The trial court denied the motion. The Court of Appeals affirmed, finding that defendant's pleas were freely, voluntarily, and understandingly made. This Court denied defendant's application for leave to appeal.[1]

Defendant then filed two unsuccessful motions for relief from judgment. This is defendant's third such motion. Although MCR 6.502(G)(1) states that a court must return without filing any successive motions for relief from judgment, MCR 6.502(G)(2) provides an exception to that rule when a retroactive change in the law has occurred.

Defendant argues that, because the Michigan Parole Board has established a policy that "life in prison means life in prison," the trial judge and defense counsel operated under a misunderstanding of the law when he was sentenced. Thus, defendant claims that he is entitled to resentencing because he did not understand the consequences of his guilty plea. Furthermore, defendant claims that changes in the parole

---

[1] *People v Stovall*, 446 Mich 862 (1994).